Next case is Ball Aerosol and Specialty Container v. Limited Brands et al. 2008-13-33 Good morning and may it please the court. The district court's judgment in this case was produced by procedural irregularities as well as substantive legal error. Our briefs cover the procedural irregularities, the conversion of the denial of our motion for summary judgment of obviousness into a grant of a summary judgment of validity, the decision on damages under the various Georgia Pacific factors done on summary judgment, and the decision of the willful infringement under Seagate also on summary judgment. I'm going to leave the procedural irregularities to our brief unless you have questions about those and focus on two arguments that should dispose of this case in this court. First is the question of obviousness. It's a legal question that this court can decide as a matter of law and has done in several cases. Second will be the question of infringement or non-infringement under the two arguments that we've made here. Let me start with obviousness. What's claimed in this patent is very simple. It's about as simple a structure as ever comes before this court. It's far simpler than the structure found to be obvious in the KSR decision. It's a candle tin with a cover on the top, protrusions on the bottom, and the cover can be used as a base. Right, and it's conceded that all of the elements in the claims in suit exist in a prior art. The question is can you combine the prior art? Exactly. Simple as that. Exactly. And the trial court said, well, you just got a bunch of generalized statements as to the reason for combining, and that's not good enough for me. The court did say that, and our opponents say that as well. Let me, before we get any further on it, let's just, I'm correct, am I not, in saying at least under the law of this court, the issue of whether there's a reason to combine is a fact question. It could be an underlying fact question. Sure question of fact is how we describe it in our jurisprudence. But I think what you'll find in this record with regard to that question is that there can't be any dispute that there is a motivation to combine. And first of all, let me take issue with both courts. Why don't you tell us exactly what's in the record that allows you to tell me that there can only be one answer? I will do that, in fact. Let me, first of all, give you the citations to our briefs, because this is very relevant to the claim made against us that we were ourselves conclusory. Our briefs, our motion for summary judgment, A1059. Our reply brief in support of our motion for summary judgment, pages A1638 and 39. The expert report of Mr. Malaguanera, that's page A1649, and you can find the specific references at pages A16. And which one of your motions do you cite that expert report? That's cited in our summary judgment motion, our motion for summary judgment of obviousness. Mr. Castanhas, is it your view that when you have a simple mechanical object and you have just a couple of references, each of which, well, references together contain all of the claim limitations, that you don't need any specific indication of a motivation that it's just an obvious thing to do to put old things together to get improvements? I think I would agree subject to actually using the language of the KSR decision. What this is, it is a combination of known elements yielding predictable results. That is exactly what we have here. It is really the same concept as even though my coffee cup at home has a rim around the bottom that keeps it elevated a little bit off of my table, I still use a coaster to keep the heat transfer from happening. That's the invention that's claimed here. That's what got them over the rejection. And by the way, just with regard to the appendix, I noticed that the citations to our brief don't cite to the prosecution history itself for the rejection, the initial rejection, and the amendment that overcame the rejection, but for the court's information, that's at pages A407 and 08, and pages A420 and A423 of the appendix that's in volume one. Well, what if you had a more complicated invention with, say, 12 components, and you have 25 different components in the prior art? Is it then obvious to pick G and combine it with K? Well, I think, Judge Lurie, the pharmaceutical obviousness cases that this court has decided in the wake of KSR suggest that there's a line drawing there, that sometimes there are a finite number of those solutions, and it's obvious enough that it results in obviousness when you combine this, that, and the other thing. And sometimes there are just so many different ones and so much work that has to be done that it's not obvious. This is, of course, not even anywhere near that line that has to be drawn in the pharmaceutical cases. This is really the same concept as the coaster under the hot coffee cup. In this case, you have, in the right reference, you have a statement that seems to suggest that there's a problem with the thermal conductivity, heat being transmitted to whatever platform the tin is resting on. Is that, in and of itself, a reason to warrant the combination that would render this claim obvious? Well, I think it would, because remember that the right, the feet or the base on right, are formed integrally, so they're still going to pass on some heat. And so, remember what right says, it's trying to minimize, not necessarily eliminate, but minimize the contact area. So what the combination of taking the cover stand, which is in Markey, dating back to the 1960s, the cover stand gives us the insulation of either, if you have the four prongs like you have on our accused device, or an annular ring that just is like on a cup that sits on the table. Then in that situation, using the cover as effectively a coaster is an obvious solution to that problem. The district court had trouble with the motivation issue, saying that a lot of this was just conclusory. He did say that. And I think... And it seems to be almost any analysis of the reasons for motivation to combine are to some extent conclusory. It's almost like, sort of like pornography. You know it when you see it. It's like, well, in this case, you know it's obvious when you see it. Well, that's exactly right. I mean, the question is, how much is enough to say that a candle burning in a metal tin is going to get hot on the bottom? There's not a lot more to say than what we said. And of course, if that analysis is a factual one, that would seem to suggest against some summary judgment. But KSR sort of makes it evident that summary judgment is not out of the question with obviousness questions. Well, no, that's exactly right. I think it takes summary judgment out for them. But when you look at what you've got in the four corners of the patents and common sense, which KSR reminds us we've got to bring with us in looking at the obviousness question, when you take those two together, from our standpoint, on our motion, which was denied and which we're appealing the denial of, there can be no genuine dispute of any material fact that would prevent us from having judgment as a matter of law. Can you show me in your expert's declaration exactly where the expert was saying that there was reason, motivation to come by, giving a reason for it? It kind of blew right by that, like, well, I gave a declaration of an expert to the trial judge, and that's enough. It's in the record today, 1680, three or four on. If you look at page 16, well, it's actually 1693, when we're talking about Wright and Marchi, which seems to be your strongest case, he says the motivation to combine is self-evident. Right, and I think- Where does he get more specific than that? Let me ask you, first of all, let me answer you- You can show me right in this affidavit. Let me try to answer you in the affidavit, but while I'm doing that, let me not forget to point you to page A1638, which is our brief in particular. 1638? Right, if you look at A1638, in the paragraph at the bottom of that page, it says, in the present case, motivation to combine the prior art exists on several levels. For example, each of the Marchi patent, the Petrick patent, the Schultz patent, and the Wright and Petrick patent relate to Campbell containers, and they all address the same problem, i.e., scorching and other heat damage that occurs to the surface on which a candle tin is placed when the candle tin is lit. Now, did your expert say that? That's a lawyer talking, right? Well, that is a lawyer. Where in the expert's affidavit does the expert say, I think there's a reason to combine because they're all dealing with the same problem? If I can, rather than standing here trying to come up with the answer to that, I try to come up with the answer when I come back to the court. Is it your view that one doesn't need an expert to deal with these references? Well, I don't think that would be necessary because, well, that's a different question. You ought to know when you come in front of me, you ought to know by heart what your expert said on this point because it's the whole case. You stood up in front of me and said, well, I cite you the expert's report. Judge Closer, take it from me. He gave plenty of reasons for combining. And the only one I could find was you said it was self-evident. And the trial judge said that's not good enough. Well, first of all, I would say that given the technology at issue here and the fact that we're talking about fire and heat, self-evident probably is good enough in this case. And again, as I said to Judge Lynn, how much is enough? Now, I'm already eating into my rebuttal time here. And I do want to answer your question. It ought to be clear, I think, that this is not rocket science we're dealing with. But if we're dealing with the law and the law says we have a fact question, then there's supposed to be some evidence in the record that supports the fact. And it looked to me like this trial judge was saying, self-evident's not good enough. Well, indeed, he did say that. Now, I do want to tell you that as a matter of law, self-evident has to be good enough in this case. I would say that as a matter of law, the facts only resolve that way, especially when you look at what the patents tell you. The patents all tell you that a metal container, or really any kind of container, holding a hot candle that's lit is going to make any point of contact with the surface hot. And the problem here is that this sort of takes us back to pre-KSR obviousness. Can I ask you a question on the claim construction as it feeds into this issue? Because, of course, you've got to construe a claim before you decide whether it's obvious or not. My understanding is that you want claim one to be construed to require actual engagement, correct? Am I right? Correct. That's the... You're saying just rest on is not enough. You have to have penetration. You have to have connection between the, whatever they call... Seating is the terminology that's used in the patent. Seating means to be bound together. Okay. Assume you're right on the claim construction. Where in the prior art does the prior art teach engagement? Well, I think... Which prior art reference? Well, Pytrush is one. Which? Pytrush. I said Pytrush before, but it's the Pytrush reference. And if you look at the red brief, page 51... When we look at Pytrush, why don't we look at it so we know what we're talking about? I think we're looking, I think you're talking about page 951. I think that's right. And with regard to Ball's brief... Where is the engagement? Pytrush got a little ridge that goes around the bottom. It's shown clearly and it sort of sits there on that thing, right? Right. So the invention talks about engaging, taking the top, the cover, right? And your view and putting it down on a surface and then having the bottom of the container have protrusions on it that lock in to the base. Lock in to the top of the cover. And what I'm saying is I didn't see any reference in the prior art that was anywhere near that. Well, let me say this to you, Judge. Are you going to agree with me now? No, I don't agree with you because I think if you look at the way that the lid is shaped... Are you talking about Pytrush now? Pytrush, yes. He's sort of the king of all this, right? Because he's the co-inventor, right? Well, in some ways he's the king of it. Where's the engagement of the bottom of the holder, which is 16? You're looking at the drawing? Right. Okay, where is in Pytrush does it teach engaging 16 into something else? You won't find that there. What you will find is the examiner's comment about Pytrush that it was sufficient that you could use it as the base for the anticipation rejection. The examiner read Pytrush as saying that you could use it as the base. And I keep trying to point you to Ball's brief also. They will show you that at the top of page 51, and I'll quote their brief, the engagement limitation had already been disclosed in Pytrush. Mr. Tannius, you're nearing the end of your time. We'll restore your rebuttal time. All right, I would appreciate it. Thank you. Mr. Moore. Yes, may it please the court. It is submitted that the district court's order should be affirmed in all respects. And we'll turn to the issues that were raised here. The district court summary judgment of validity was correct from a substantive standpoint. There were three sets of briefs submitted on this to the district court. The initial summary judgment, then when the KSR case came out, the judge sui sponte requested briefs. And then on the rule 59 motion for reconsideration, the court addressed it again. The district court started out promptly with a presumption of validity and a clear and convincing evidence burden, which, of course, applies on appeal as well. The district court adopted the level of ordinary skill in the art that the appellants suggested, and the district court and also on this appeal. And that is- But we have to review a case on the record applying proper rules, irrespective of how many briefs were filed below and how thoroughly the court went through the procedure. And you've got a very simple mechanical invention here. And you've got all the pieces in a couple of references. Why isn't it plainly obvious and why can't we so hold? Your Honor, what we have here, one thing opposing counsel didn't mention was the space that's between the cover- That's in one of the references, isn't it? Well, there's not a convection airflow space. What about marshy? Marshy has space. If you look at marshy, marshy has a stand. Yeah, it's like this. It's got sort of four legs. And it has a pocket. It's high up above, and the air blows around underneath it. It has a pocket, and the cover sits on the stand, but it traps air in that pocket that it sits on. Yeah, but what about the air that blows around underneath? Air could blow under the stand. Right, and the only way you're going to have a scorching problem is if the heat comes down the legs to touch the table or whatever that it's on, right? Well, you can have a problem also with that stand overheating. And marshy has a glass drawer. You're not worried. Scorching problem isn't scorching the bottom of the stand. Nobody worries about scorching the bottom of the metal container that the candle's in. You're worried about scorching grandma's antique table, right? That's one concern, but you're also- There's a whole lot of air flowing around above the top of the table and before the bottom of the candle. But you're also concerned with how hot that stand gets by trapping air in- Let's just focus flat on the question of, it's conceded that all the elements of the prior art are in the prior art references, right? It's too late. The evidence are in prior art references. Take murky and right, okay? So, I'm looking at the Supreme Court opinion in KSR and it says, I'm going to read it to you. Because it was telling us that we had been far too rigid in what we were requiring in KSR in order to find a combination of references. Under the correct analysis, the Supreme Court says, any need or problem known in the field of endeavor at the time of the invention. And so, the need or problem known in the field in your case is scorching. Is that your patent says we're trying- Let me finish. It says scorching. It says, any need or problem addressed by the patent, and that need was addressed by your patent, right? Minimize scorching. That alone can provide a reason for combining the elements in the manner claimed. Why isn't the game over? Well, I think that could be true in several patents if there's simply a statement of the problem. Soon we write an opinion in which we say, in this case, the need or problem known in the field of endeavor was scorching. It was no. And that need was addressed by the patent, right? Yet, we hold that you still are not going to combine the references. Don't you think the Supreme Court would give us a per curiam reversal on that opinion? No, not on the record here with the prior art that we've gone through. Because, once again, there's no- Marshy is a glass bowl. It is also a plastic stand. They didn't have the- This is a candle tin made of metal, where you have the transfer. I think there's another- So, I mean, Markey teaches also, if you're worried about scorching, you know, get the scorching, the thing that can cause the scorching, get it high up, get it way up off of the surface. And so does the Wright reference. The Wright reference has a ring of protuberances that further space the candle tin from the surface that supports the candle tin. Right. If you said it, for example, on this surface, yes, it does have that, but it doesn't have that- For the purpose of avoiding scorching or damage of the surface because of the transfer of heat. The very problem addressed. I would suggest this, that the prior art teaches away from this because Wright is talking about flashover. And if you look at Wright, you see a dome bottom that has a void and that traps air there and acts to insulate the air and trap heat. Right, but there's plenty of prior art dealing with scorching. Yes. The scorching problem has been around for a long, long time. In a crowded field, lots of people have been trying to minimize scorching. Right. I don't see what your invention gains, but just buys a little more distance away from the surface you're worried about scorching. Well, what it does, it allows the cover or the holder to be put on the cover. Right. That buys you another half inch. It's more compact. It doesn't serve as a stand as in Marchie, but it has the ventilation flow space between the two, which with a metal cover is important because it prevents the cover from itself becoming heated. Because of the natural ventilation space, the gap that's between the cover and the holder. So it's different in that respect. And all of the references, Marchie, Wright and Petrick, Petrick, we're talking about Petrick and asking about that. And the question was, where's the engagement? And I think what the opposing counsel was suggesting is the engagement is when you put that cover in there. But if you look at that, if that did occur, it traps air in there. There's no gap, no flow space there. So in the engagement that is argued to exist in the Petrick patent, there is no airflow between the cover and the holder. So this wrapping here is directing heat back up into the holder. Isn't there airflow in the embodiment shown in figure 8 of Wright? Of Wright? That has these little protuberance 52A on the bottom? There's not... There could be a minimal amount of airflow there between the surface, not between the cover. Well, nonetheless, there is some. Because that's what those little protruding structures do. They lift up the bottom from the surface and that provides for a gap. It addresses scorching, but not as well as the patented invention addresses scorching. By having the cover and so that the... But I'm not sure that's relevant, how well it performs. The question is what it teaches and whether there's a sufficient reason to conclude that these references combined render this claim invalid. Well, there's no... Once again, because these references all trap air and because Marci itself is a different sort of product... How can you dismiss Marci? Marci wasn't in front of the examiner. If you look at it on A1037, a picture of the darn thing, it's sitting up there and the wind is blowing through the room and blowing underneath this stand. All kinds of convection, cooling, the plastic mount or whatever it is that the thing sits on. So what if it's plastic? Who cares? Well, once again, it's not dealing... It was not dealing with the issue of how hot the cover of the stand gets because... Well, say, who cares? I mean, it's a great example of taking something that has a lid or has a top on it. And it's a neat little top and it's designed to jam down in the top of the thing the candle's in so it snuffs up. It fits in real tight and you pull it out and you put it down on the bottom and you sit the thing on it. And you have both trapped air in the little gap underneath it and then you've got air blowing underneath your air conditioning system. Blowing underneath, that's going to cool, if you will, the trapped air. That's your invention. Well, it's not because our invention, the claimed invention calls for the space between the bottom of the holder and the top of the cover. What I'm trying to say is, you know, you're saying now, well, you'd do it a little bit better when you said that a minute ago, but you're kind of on the run. Well, this is a different... This is not... Marshy is not within the scope of the claims. And so it's... I'm just saying, looking at Marshy and looking at Wright, looking at all the rest of the things, then clearly it's got to be obvious as all get out to anybody that you could take the top and use it as the base. You take the lid and you can put it down and then you can set the candle holder on it, right? In Marshy, you're talking about? Yeah. So that's... So what else does your invention do besides that? Well, it provides the space between the cover and the holder that allows a better dissipation of heat and allows for... It can allow for a lower base and it's directly a metal-to-metal contact. Mr. Moore, do you want to defend your infringement judgment? The claim, yes. First of all, turning to the reasonably capable issue, under the Intel case, this is an apparatus claim. It's a candle tin. But we don't have any language in the claims here about capable of. There is, to me, a clear distinction. Intel is not a broad-sweeping doctrine about reasonably capable being sufficient for infringement in all cases. But the Kegel case as well as Doerr-King are also in point here. But they're all very narrow cases relating to claims that talk about capable or able to do something as opposed to structural statements in claims about interconnections. Your Honor, I think here because the claim says of the two positions that can exist, there are two configurations that are stated, that is a statement that it's capable of being placed in those two positions. One where the cover's on top of the holder, the other when the cover is beneath. I hear you, but I think you're arguing the case you'd like to have, not the one you do have. The one you do have doesn't say capable. But I would respectfully submit that it's got to be, you've got something in two different positions. And I think it's the Doerr-King case, the bowling machine case. You've got two, but it's got to be in one position or the other. And the claim says it can be in these two positions, so it's reasonably capable of being... There's no case other than Intel in this court's jurisprudence that's ever applied that doctrine, right? The Kugel case and Doerr-King I believe also discuss that. And rule in favor of... Yes, Your Honor. What are the sites of those cases? That is in our red brief. I don't have the case, but this case is different from... They're in the list of the cases in your red brief, which... Doerr-King, you say? Yes, Doerr-King and Kugel. Doerr-King is not a precedential case, right? No, it's not. Federal appendix. I couldn't find a precedential case in this court other than Intel that ever applied the doctrine. What was your other case besides Doerr-King? The Kugel case, and I'm not sure exactly where that site is. But this is... Okay, thank you. For someone... Page 40. Excuse me? Page 40. 40? Your Honor, yes, sir. It was unfortunately not listed in our table of contents, and I apologize for that. That's the bowling machine case. You're referring to Kugel v. A.M.F. bowling. Is that correct? Yes. It's 127 F. 3rd, 1420. Yes, sir. But this whole notion stems from Intel, and Intel is a very narrow case relating to a very narrow style of claim drafting that I don't see implicated here, and it certainly doesn't stand for the proposition that reasonably capable of is a doctrine of infringement. Well, Your Honor, I would submit to this that because the claim language is the way it is, that that's basically a condition of the claim. What part of the claim are you referring to? Well, just the fact that the claim says that the product can be put in these two configurations. Well, let's look at exactly what it is you're talking about. All right. If we look at column 5, beginning with line 41, when it talks about the cover size to fit over the holder and removed to be placed over an open end of the holder to cover the candle and so forth, and then later it says that the cover is the holder and cover being placed upon the surface open end downs and so forth. That's a statement of a structural arrangement. It's not it's capable of doing this. It's a statement of the arrangement itself. Your Honor, I would submit that this is somewhat like claims when you talk about two components and you talk about how they're sized so that maybe one can pass through another component or something like that. It's talking about a configurable relationship that exists between the holder and the cover. Don't you have to demonstrate in order to establish infringement that an accused structure accomplishes that positional arrangement? Not for the apparatus claim because something can't be in two places at one time. So I think it gets to having the capability of being in those two positions. This particular product can be used by a housewife such as my wife without infringement. My wife tends to throw the lid covers away because she's got these little things that she likes to put the candle on. Your Honor, I think if it's sold with a cover, then that is an infringement. Even if no one ever puts the candle on the lid? Yes, Your Honor. Still an infringement? Yes, because it's reasonably capable. It can be positioned. It's simply like this. If you had a claim that was directed to a piece of equipment that was operated by a key and it performs, it may not be sold to have the sort of motion that's discussed for the engine in describing the claim, but nevertheless it would be a direct infringement. So we're dealing with direct infringement here. For example, the ACO case is different from the ACO case because that was an indirect infringement case. It could have been claimed, this invention could have been claimed as having a tin structure, a candle, a cover structure, and the cover being capable of being placed on the bottom. It didn't say that. In retrospect, I guess it could have been. Thank you, Mr. Moore. Thank you, Your Honor. Your Honor. Stanius has some rebuttal time. Thank you, Your Honor. I'll be as brief as I can be. First, with regard to, I'll have four points total. First two with regard to infringement, or non-infringement. Second two with regard to obviousness. With regard to infringement and this whole point about capability, Judge Lynn, you have our point exactly. Mr. Moore cited the Doorkin case that's non-presidential, as Judge Clevenger pointed out. The Kegel case was a case where the device was found to infringe in any configuration whatsoever. And that's a distinction from the Acko case, Your Honor, because that's distinguished by my opponents as being a case of indirect infringement. But the point of that discussion in Acko is how you define direct infringement. And in that case, you had a claim that was written that could infringe in one way. The expert said you could do it this way, or you could do it the way that everybody was instructed. And because it wasn't either always an inevitable infringement, and there weren't specific instances of infringement shown, there was no direct infringement in that case. That's exactly the case we have here. They admit they don't have any proof of actual infringing configurations. Second, with regard to the fit point, the examiner said that Pytrish discloses the invention as claimed. I'm reading from page A408. The cover 20 includes a projection 40, and the holder 10 has a recess 28, generally corresponding in size and shape to the projection. The two points with regard to obviousness. Judge Clevenger, you asked for citations. I'll give you the best that I can here. And that is you can find those at, excuse me, let me find my notes here. Pages 1697 and 1695 are the two places in the expert's report where he does use the self-evident line. But this is the language that actually appears there. I'm sorry, I said 1695. It's 1693 and 1697. In both of those cases, he says, the motivation to combine Wright and Marchi is self-evident. Both references disclose candle holders that incorporate means for dissipating heat when such candles are in use. And you'll see that in Marchi, 1038, and in Wright at A958. It's exactly there. And Malbuenera, the expert, also said that a person of ordinary skill would understand that using the cover as a base is another means to solve the problem recognized by prior art. Finally, KSR. We've talked a lot about summary judgment and whether that was enough and whether the motivation to combine is a question of fact. Remember that in KSR, the Supreme Court itself ordered summary judgment in that case. So it shows that motivation isn't necessarily a factual question because here, even the motivation is, to use the vernacular, obvious. They made it clear that they agreed with the reasoning of the district court. That's true, but they remember that summary judgment is reviewed de novo and they adopted what the district court did there. They were affirming a summary judgment of invalidity. Sure. And there's another part of KSR. That's a little different than us reversing a summary judgment of non-invalidity and ordering the entry of a summary judgment of... It's slightly different, but on this record, it's a distinction without a difference. Remember that KSR simply requires... So you're saying no reasonable juror... Absolutely. ...could conclude otherwise than that there is a motivation to combine these references. Absolutely. There is a reason, whatever it is, that's adequate. Absolutely. And no juror could find hope contrary. Absolutely. On this record, absolutely. The trial judge was less than a reasonable juror. I think I should not actually respond to that except to say that there were significant procedural irregularities in this case. The last point I want to leave you with is that KSR doesn't require an extensive showing of motivation. It might just require some articulated reasoning. We had that articulated reasoning both in the briefs, not just attorney argument, but articulated reasoning based on the facts of record, including the patents and the expert testimony. And we presented it to this court in our brief, our blue brief, at pages 37 and 38. In this case, the notion that the motivation to combine is self-evident is not simply... I think you can argue it's not simply a matter of how people might look at the references sort of in the abstract. The references themselves do have reference to this problem. They do have reference to the ways in which the problem can be addressed so that the self-evident nature of the motivation is not necessarily because of expert testimony, but the documents themselves, it seems to me. And exactly right, Judge Lynn, and we can't forget common sense. Fire is hot. That's what this invention is addressing. That's been around since well before 1966. Unless the court has further questions, thank you for your time. Thank you, Mr. Kostanius. You both shed light on the case. Sorry about that.